UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
*EASTERN* _____ DIVISION

JUDGE'S COPY

JAN 2 8 2004

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

JERLENE HARRIS _____ )
)
_____ )
(Name of the plaintiff or plaintiffs) )
)
V. )
)
CITY COLLEGES of Chicago, OLIVET )
HARVEY College, & MARTHA J. )
BARNES )
(Name of the defendant or defendants) )

CIVIL ACTION

JUDGE GOTTSCHALL

NO. 04 C 0695
(Case number will be supplied by the assignment clerk)

MAGISTRATE JUDGE KEYS

COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is JERLENE HARRIS _____ of
the county of Cook _____ in the state of IL.

3. The defendant is CITY Colleges of Chicago _____, who
resides at (street address) 226 West Jackson Blvd,
(city) Chicago (county) Cook (state) IL (ZIP) 60604
(Defendant's telephone number) (312) - 553-2920

(day) 13ᵗʰ (year) 2004 a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [check all that apply]

(a) ☒ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) ☒ Disability (Americans with Disabilities Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☒ Sex (Title VII of the Civil Rights Act of 1964)

10. The plaintiff is suing the defendant, a state or local government agency, for discrimination on the basis of race, color, or national origin (42 U.S.C. §1983).

☐ YES   ☒ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); over 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; over the A.D.E.A. by 42 U.S.C.§12117.

12. The defendant [check all that apply]

(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☒ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ other (specify): Pattern of continuous retalitory discrimination by the defendant(s) because I filed serveral worker's compensation claims. The defendant(s) willfuly intent reported

(g) ☒  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒  Grant such other relief as the Court may find appropriate.

(Plaintiff's signature) _Jerlene Harris_

(Plaintiff's name) _JERLENE HARRIS_

(Plaintiff's street address) _15313 Ashland_

(City) _HARVEY_ (State) _IL_ (ZIP) _60426_

(Plaintiff's telephone number) _(708) - 333 - 2130_

JERLENE HARRIS — PLAINtiff

V.

CITY COLLEGES of CHICAGO,
OLIVE-HARVEY, & MARtha J. BARNES

SUPPORTING Documents with
COMPLAINT of EMPLOYMENT
DISCRIMINATION

1) EEOC DISMISSAL and NOTICE of RIGHTS — 2 pages
2) John ROWE, DIRECTOR of EEOC, Letter dated JAN.8,04 — 2 pages
3) HARVEY POSTAL SERVICE — RUSS COLLINS, ASST. to The POSTMASTER — 1 page
4) TWO EEOC SECURITY PASSES — 1 PAGE
5) EEOC CHARGE # 210-2003-34923 — August 25,03 — 10 pages
6) EEOC CHARGE # 210-2003-35135 — SEP. 4.03 — 3 PAGES
7) CITY of CHICAGO Commission on HUMAN Relations charge #03-E122 — 2 pages
8) OLIVE-HARVEY College's SECURITY Report # 2297 AND E-MAIL — 2 pages
9) JERLENE HARRIS's MEMO re: Feb.03,03 Accident — 1 PAGE
10) JERLENE HARRIS' Letter to LENN Arnold — re: SURS — 4 pages
11) CRAWFORD's Letter dated March 10, 2003 — 1 page
12) JERLENE HARRIS' Letter to Sue Schulz, President, AFSCME — 6 pages
13) JERLENE HARRIS' Letter to SHARON PRAYOR dated Oct.2,03 — 2 pages
14) SHARON PIAGOR's letter dated Oct.15, 2002 — 1 PAGE
15) DR. PAUL B. LEVY's LETTER dated JULY 25, 2001 1 page
16) DR. JERLENE HARRIS' letter to DR. WATSON. — 2 PAGES
17) JERLENE HARRIS 'Letter to CCC GENERAL LEGAL Council — 2 PAGES
18) OFFICE of THE GENERAL Counsel to ETHEL Silber, Chief Steward — 2 pages
19) REGIONAL MRI of South HOLLAND — Pt. JERLENE HARRIS — 1 PAGE
20) SURS's LETTER to DR. XIA — Re: JERLENE HARRIS — 9 PAGES.
21) DOCTOR — Report for JERLENE HARRIS — 1 PAGE
22) DR. XIG's STATEMENT 8/29/03 — JERLENE HARRIS — 1 PAGE
23) DEAN MARTha J. BARNES' Letter to JERLENE HARRIS — 1 PAGE
24) CCC LEAVE EXTENSION REQUEST FORM JUN.27,03
        Shirley Chappell — 3 PAGES.
25) CCC LEAVE EXTENSION REQUEST FORM JUN.27,03
        Completed Signatures — 3 PAGES

**Equal Employment Opportunity Commission**

# DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Jerlene Harris<br>15313 Ashland<br>Harvey, Illinois 60426 | From: Equal Employment Opportunity Commission<br>Chicago District Office<br>500 West Madison Street<br>Suite 2800<br>Chicago, Illinois 60661 |

Certified Mail No.: 7001 1940 0003 8831 4168

[ ] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2003-35135 | Dorothea Hines, Investigator | (312) 886-9123 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[ ]   The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[ ]   Respondent employs less than the required number of employees.

[ ]   Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]   You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[ ]   The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]   The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ X ]   The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   Other *(briefly state)*   _____

## - NOTICE OF SUIT RIGHTS -

[ X ]   **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[ ]   **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[ ]   **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

*11-10-03*

On behalf of the Commission

*John P. Rowe*

John P. Rowe, District Director

Enclosures
    Information Sheet
    Copy of Charge
cc: Respondent(s)    City Colleges of Chicago, Olive Harvey College

Equal Employment Opportunity Commission

# DISMISSAL AND NOTICE OF RIGHTS

To: Jerlene Harris
15313 Ashland
Harvey, Illinois  60426

From: Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street
Suite 2800
Chicago, Illinois  60661

Certified Mail No.: 7001 1940 0003 8831 4168

[   ] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2003-34923 | Dorothea Hines, Investigator | (312) 886-9123 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[   ]   The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[   ]   Respondent employs less than the required number of employees.

[   ]   Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge.  Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[   ]   You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge.  You have had more than 30 days in which to respond to our final written request.

[   ]   The Commission has made reasonable efforts to locate you and has been unable to do so.  You have had at least 30 days in which to respond to a notice sent to your last known address.

[   ]   The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged.  At least 30 days have expired since you received actual notice of this settlement offer.

[ X ]   The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[   ]   Other (*briefly state*) _____

## - NOTICE OF SUIT RIGHTS -

[ X ]   **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge.  If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction.  **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[   ]   **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge.  If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction.  **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[   ]   **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

11-10-03

On behalf of the Commission

John P. Rowe, District Director

Enclosures
Information Sheet
Copy of Charge

cc: Respondent(s)     City Colleges of Chicago, Olive Harvey College

EEOC Form 161 (Test 5/9



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

January 8, 2004

Jerlene Harris
15313 Ashland
Harvey, Illinois 60426

Re:    Charging Party: Jerlene Harris
       Respondent: City Colleges of Chicago, Olive Harvey College
       EEOC Number: 210-2003-35135

Dear Mr. Carroll:    *Who is this person?*

The enclosed Dismissal was sent to you November 10, 2003 by certified mail. However, the Postal Service returned it to the Commission because you did not claim it.

We are sending it again so that you may have another opportunity to receive your Dismissal.

Sincerely,

John P. Rowe
District Director

Enclosure:
(Form 161)

CHICAGO DISTRICT OFFICE
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
500 WEST MADISON STREET, SUITE 2800
CHICAGO, ILLINOIS 60661

OFFICIAL BUSINESS

CERTIFIED MAIL

7001 1940 0003 8831 4167

U.S. OFFICIAL MAIL
U.S.POSTAGE
2.90

CHICAGO
NOV 13 '03

HARR313
604266106 IN 18 11/16/03
NO FORWARD ORDER ON FILE
UNABLE TO FORWARD
RETURN TO SENDER
RETURN TO SENDER

ASSISTANT TO THE POSTMASTER
HARVEY MAIN POST OFFICE

 **UNITED STATES
POSTAL SERVICE**

January 15, 2004

Jerlene Harris
15313 Ashland Ave
Harvey, IL 60426

RE: Certified Mail #7001 1940 0003 8831 4168

Dear Ms. Harris;

I am writing in regards to the above mentioned letter which was mailed to you from Chicago, IL
November 13, 2003. Our records show that the letter was endorsed in error "Return to Sender No
Forward Order On File." The letter was returned to sender on 11/16/2003. After review of all
relevant records there is no record of any attempt to deliver this letter by any Postal Employee. After
further research we have found that you have been living at this address and is continuing to receive
mail at this address.

Please accept our apology for this inconvenience and we want to assure you that we are working to
improve our handling of this type of mail to prevent any further mistakes in returning mail that is
properly addressed.

Sincerely,

*Russ Col*

Russ Collins
Assistant to the Postmaster



WEST MADISON

Jerlene Harris

To See: INTAKE UNIT, EEOC

11/6/2003 ⋮60 PM

WEST MADISON

Jerlene harris

To See: INTAKE UNIT, EEOC

EEOC, Suite 2800

8/25/2003 8:25 AM

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 210-2003-34923 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Jerlene Harris** | **(708) 333-2130** | **10-15-1946** |

| Street Address | City, State and ZIP Code |
|---|---|
| **15313 Ashland Harvey, IL 60426** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CITY COLLEGES OF CHICAGO** | **500 or More** | **(312) 553-2500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Olive Harvey 226 W. Jackson Chicago, IL 60606** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **10-01-2000** | **08-25-2003** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on December 21, 1987. In October 2000, I was diagnosed with a disability. Since then, I have requested a reasonable accommodation; however, Respondent has ignored me.

I believe that I have been discriminated against by Respondent because of my disability in violation of Title I of the Americans with Disabilities Act of 1990.

RECEIVED EEOC

AUG 25 2003

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Aug 25, 2003 _____ *Charging Party Signature* <br> Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year )* |

Jerlene Harris, Applicant
15313 S. Ashland
Harvey, IL 60426
708.333.2130
1 of 9 pages

I began my employment as an Adult Educator with City Colleges of Chicago – Olive – Harvey campus on December 21, 1987 to the present. Since 1996, I have experienced continuous acts of discriminations, retaliations, and harassments by my employer, Dean Martha J. Barnes of the Adult Education Program. (Will be referred as the department) These issues and concerns are:
✓ Prolonging of disability benefits through SURS
✓ Total disregard for my health and safety issues
✓ Leave of extension request purposely delayed
✓ Reduction in assigned work hours
✓ Disregard of my tenure and seniority
✓ Denial of "light duty" assignment
✓ Denial of my request for accommodations due to my physical disabilities as a result of several accidents on the job
✓ No compensation for attending prior approved professional workshops
✓ Failure to distribute my payroll wages in the prescribed time period


EXHIBIT #1
  1. **1996,** there was an overall state of fear for the safety of my students and myself in the classroom and thru out the mobile units site. I made numerous reported incidents of students out of control during class time. I received very little support from the department to enforce CCC's policy governing student's behavior.

   **March 14, 1996,** a student verbally threatened me with body harm.
   **March 18, 1996,** another student willfully kicked the classroom entrance door in my face I suffered a head trauma and my eyeglasses were broken which I was wearing at the time. My department "wash both issues under the table" at a meeting . I was not allowed any Union representations or prior advance notice of this meeting in order to present my witness's statement . CCC has never paid or reimbursed me for my medical expenses and lost wages as a result of my injuries. I have never received a letter from CCC's workers compensation insurance. (O-H incident and Security reports, police report, medical reports)

EXHIBIT #2
  2. **1997**
   I have had great difficult receiving compensation for my assignments for registration recruitment and reimbursement for supplies I purchased which were previously approved. (Letter of support)

1

EXHIBIT # 3
**1998**

**April 4, 1998**
I attended an approved professional workshops Internet Training May 1st, and May 8, 1998. The department paid all required fees, after numerous attempts, I never got compensated for attending the workshop.

The retaliation for my requesting pay for the workshop resulted in being issued and received "off cycle checks" on 4-15-1998 and 5-12-1998. ( O-H payroll records will reveal the required information had been submitted and approved by the department and that I should have received wages on the day of pay date for those periods.)

EXHIBIT #4
**4. 1999**
Issued and received "off cycle checks" on 2-16-1999 and 12-8-1999. O-H payroll records will reveal the required information had been submitted and approved by the department and that I should have received my wages on the day of pay date for those periods as well.

EXHIBIT #5
5. **2000**
**July 18, 2000**

I exited the elevator in the main building slipped and fell resulting in injuring my back and carpal tunnel. According to Olive-Harvey's Personnel Assistant (Ms. Lenn Arnold) and Ms. Martha Barnes I did not have any benefits since I was an hourly worker. If I needed time off to recover from my injuries I could take a leave of absent without pay. I was off approximately three weeks but my pain persisted in my lower back, buttock and hand. I asked for but did not receive accommodations for better seating, overhead projector, and desk podium, with the exception of a teacher aide-, which I received for brief periods and far in between-, for my disability. I did not hear from CCC 's workers compensation insurance until December 2000 when a booklet came with Xmas mail. (I hired an attorney in November 2000) I have required medical treatment three or more times per week to help relief me of this chronic pain. I have continued to receive this medical care thru 2001, 2002, and to the year of this letter 2003.

EXHIBIT #6
**6. August 16, 2000** (approx.) Chicago Tribune 9th Annual Teacher Resource Fair, at Navy Pier, the department reimbursed me for the fee of $35. I (never) could get compensation for attending the workshop.

**May 7th, 2001**

A memo, regarding summer class assignments with the addition of levels 0.0 to 2.9 in Reading and math my request for reconsideration was honored.

## EXHIBIT #7
**6. July 25, 2001**

Dr. Levy's letter asked for accommodation of "light duty" was given to Dean Barnes, she discussed the issue with Lenn Arnold, Personnel Assistant, by telephone, after her conversation, Dean Barnes stated to me the Department did not have "light duty", she added that I could take a non-paid leave.

## EXHIBIT #8
**7. October 3, 2001**

Ms. Davis, (a student) was put out of the class because she continued to disturb the class. However, she convinced Asst. Dean Williams and Ms. Thompson, counselor that she was learning in my class and wanted to return to the class. The following week without provocation Ms. Davis slammed the classroom entrance door against my body. I believe her intention was to cause deliberate harm to me. (I received medical treatment for my injuries) The department only transferred the student to another class no other action was taken.

## EXHIBIT #9
**November 16, 2001**

Adult Education Service Center Fall Conference –Northern Region Indian Lake Resort, Bloomingdale, IL. I attended a previously approved workshop and I (never) received my compensation for attending. The Department provided bus transportation

## EXHIBIT #10
**December 6, 2001**

Dr. Levy 's letter requested that I should be off work because my medical condition was poor. This letter was hand given to Dean Barnes and a copy also given to lenn Arnold. However, there were no change in my assignment.

## EXHIBIT #11
**December 2001**

I wrote a letter to receive 10.5 hours of compensation for attending two required work-training sessions at Malcolm X College, June 15, 2001 and at Richard Daley College, October 5, 2001. All Adult Educators received their compensation for these two professional training sessions long over due. According to City Colleges policies, a Adult Educators shall be paid no more than 21 days after initial performance and or activity.

## EXHIBIT #12
**January 2002**

I reported to the Union Local 3506 Olive –Harvey College's steward and chief steward that a clerical worker- Mrs. Murry was teaching a reading class, and that part-time non-union clerical workers were being assigned to work registration recruitment in the community. The Adult Educator had established past practice and job duty to perform registration recruitment at their hourly rate. However, the department started asking Adult Educator to volunteer their services to distribute the flyers in their community. The Local 3506 did not take action regarding this information either.

EXHIBIT #13
**February 5, 2002**

I signed ref. OH 004445 to request to attend a two days conference on March 6-7 in Springfield, IL. During the week of March 5, 2002 I was told that the conference will be three days in Springfield. Mrs. Barksdale and Asst. Ann Williams assured me in front of a witness, Mrs. Ola Roudez, that I would be compensated for March 8, 2002. However, when I tried to include the third day on my time sheet I was told -by Asst. Dean Williams- the money came out a different budget therefore it could be not be included with the regular hours. I was not compensated for March 8, 2002 session. CCC provided the bus transportation for all the staff. I was allowed an entire seat due my medical condition. The bus returned to Springfield on March 8TH at 1:30pm to take the group back to Chicago which arrival at Malcolm X College at 6:30pm. According to the Dean Barnes's memorandum February 1, 2002 The District Office and the Adult Education Program at Olive –Harvey College, sponsored this three days conference. I filed a union grievance 107-02 my for compensation .

EXHIBIT # 14
**April 19, 2002**

I attended an approved professional training GED Math and Science Workshop from 9:00am to 3:00pm. The department paid the fees. I was never compensated.

EXHIBIT # 15
**May 13, 2002**

I completed ref # OH 004769 to attend a two days professional training for GED Illinois Online Instructor on June 13th and 20th 2002. I was not allowed to attend this two days workshop which I brought to the attention of the Department. Asst. Dean Williams stated one day before the conference that I could not attend the conference "because the requisition did not go thru" " I f I wanted to attend I had to lose a day pay, pay for sessions, and provide my own transportation." However, I later learned another worker, Mrs. Barksdale was allowed to attend this conference at the expense of the Department. The conference was designed for one Administrator and one Adult Educator to attend for one price of $20. I expressed my dismay to others out side of the department. I was later allowed to attend this training on August 8, 15, and 2002 at the department expense.

4

EXHIBIT # 16
**May 2002**

My seniority and written request was not considered in the assignment of class for summer 2002 term. My work hours per week were reduced to 21 hours. I was not given the same consideration as other workers with more seniority than me to choose available position. I had 14 years of employment with the department and workers with less years were selected to have more work hours than myself. I filed a Union grievance 107-03 in regards to my seniority status. Again, I was assigned to teach levels 0.0-2.9 that I (never had training to teach at such a lower level), my letter to request a change in my schedule was denied, prior to the previous request change in 2001. This assignment also cause me undue mental and physical stress .

EXHIBIT # 17
**August 14-15 2002**

I was verbally threatened with disciplinary action by manager, Ms. Mc Ghee, manager if I did not pick –up a box containing students sample work and official reports which weight more than my capacity to lift (physician 's order # 10lbs.) which resulted in another personal injury of a damaged nerve, which Ms. Mc Ghee was informed of my medical history. The department did not take any action . (see October 2, 2002 letter to Local 3506)

EXHIBIT # 18
**Fall term 2002**

I was required to do an assignment but I was not allowed enough paper to complete the task. I was faced with disciplinary action by manager, Ms. A. Williams, if the assignment was not finished before I left the campus I got help from another co-worker, Mrs. B. Neeley , who shared her paper supply. September 7, 2002, I felt forced to spend my wages to buy Xerox paper since I could not get material the first week of class to be prepared for the coming week. I was never reimbursed for the purchase of the paper. (see October 2, 2002 letter to Local 3506)

EXHIBIT # 19
**October 2, 2002**

I reported to the EEOC officer, Ms. Sharon Prayor the continuous discrimination /retaliation actions of Dean Barnes and the need for accommodations for my disability. I did not receive any relief in fact condition got worst the following term (January 13- February 3, 2003 all of my ten minutes breaks were cancelled and the students' schedules were very confusing for weeks.) I also reported my issues of continuous discrimination /retaliation actions of Dean Barnes in a detailed grievance to the president of AFSCME Local 3605.

EXHIBIT # 20
**October 10, 2002**

A staff meeting was scheduled when I was off duty and had to information to be discussed at the meeting. She stated that she would have a brief meeting with me on Monday, October 14, 2002 even though I was returning back to the campus for my 3:30p.m. class and we saw each other when I returned, she still insisted I would get the information next week. During the brief meeting on 10-14-02, I was told about the Distinguish Adult Educator Award Announcement but not the deadline for completing your package. The GED Online Instruction positions which required an applicant to volunteer 8 hours of training on campus the following Friday. I shared with Dr. Harvey the fact that I had already received my certificate to teach GED Online in August 8th and 15th 2002. After Dr. Harvey spoke with Dean Barnes by telephone it was decided that I still had to volunteer for 8 more hours on Friday to be considered for the position. Even though, I already had received 12 hours of training and a letter from the Presenter, Barbara Sabaj stating I definite did not need the class on Friday. I applied for the position but I was not considered for any of the seven openings.

After being nominated and as courtesy to my co-worker, I decided to add a few pages to my previous nomination package for the Distinguish Adult Educator Award due my failing health, I did not met the deadline. I asked Dean Barnes for an extension do to the circumstances of my deteriorating health and the four days delay Of not informing me about the Distinguish Adult Educator Award Announcement. ( see my letter <u>November 18, 2002</u> and Dean Barnes 's reply in a letter <u>October 18, 2003.</u>

<u>EXHIBIT # 21</u>
**December 19, 2002**

I was instructed by Dr. Harvey, manager, to change my grade on the Students Attendance Report (SAR) to increase funding for the department. Dr. Harvey provided me with a letter to make these changes.. ( I reported this information to a State agency)

EXHIBIT # 22
**January 13 - Feb 3, 2003**
The department continued to deny me accommodation of a teacher's aide to assist
with the over-crowded literacy classroom and the addition demands of teaching the
lower levels students. These students had many disciplinary problems and special
learning disabilities which I had no training to address.. The department would not
enforce CCC 's student behavior policy. It was very painfully for me to perform
many tasks required in teaching: writing on the blackboard seem to split my back in
half, sitting, walking, standing, any forward bending movement increased my pain
level. This environment was very stressful for me. I was continuing receiving
medical treatment three to four time per week as a result of injuries on the job since
2000. I was never told about the "sincere illness clause benefits" in CCC's District –
Wide Employee Manual nor was I allowed this valuable resource only full –time
Employees were given CCC' s District Wide Employees Manual according to Ms.
Lenn Arnold, Personnel Assistant.

EXHIBIT # 23
**January 13, 2003 to February 3, 2003**
Dr. Harvey, manager, suspended all of my 10 minutes breaks after 50 minutes of
contact with the students. (This action also included the student too.) I was force to
work thru my assigned three classes on Mondays and Wednesdays of 4 hours, ½hour
break (used for preparing for the next class, brief meeting, and maybe lunch it was a
state of high tension rush) before the next class then 3hours and 1 hour. On Tuesdays
and Thursdays, I was forced to work thru my assigned two classes of 4 hours, on my
break between classes I went to the doctor to received medical treatment for my pain
in order to complete another 1 hour class in the afternoon.

EXHIBIT # 24
**January 2003- February 3, 2003**
My ABE/GED reading class ranged from 4.0 to 10.9 levels the class was so over
crowd, I had to move between two classrooms 509 and 508 in building # 5. I was told
by Dr. Harvey, manager, that I could not turn a student away no matter what time he
/she came to class. This directive created an unsafe and unproductive learning
environment. (Check students' sign-in sheets.)

EXHIBIT # 25
**January 21, 2003**
I was directed by Asst. Dean Ann Williams to allow the literacy level students to sign-
in and leave to go to another class because a conflict in scheduling existed. I refused to
comply with this request. It was very difficult to teach since some students came
only on Mondays and Wednesdays, Tuesdays and Thursdays, and Mondays –
Thursdays. This created a climate that I could not determine where the student
belong since I could not get a copy of the Adult Education Grade Report which listed
students assignments.( The students sign-in sheets will support my claim.)

EXHIBIT # 26
**January 23, 2003**

I took pictures in the area where the overhead projector and stand were being stored as a "catch all" in building # 5. On Monday January 27, 2003, Dr. Harvey, manager allowed me to have the overhead projector and stand but without the necessary supplies needed to use the equipment. It was also my responsibility to push this equipment 35 plus pounds over 40 yards to the next building.

EXHIBIT # 27
**February 3, 2003**

I fell in the women's restroom in the stall (without rails or handicap accessible) in building # 6. My department fail to follow written procedures outline in CCC 's District -Wide Employee Manual –Incident/Accident Report page 59. Olive-Harvey Security 's report # 2297 is an inaccurate report as to the facts as I reported to the officer. My reported account, the witness's names and their account were not taken, I was not allowed to read or sign this document for accuracy. I later learned this erroneous report was used as facts to report my accident to CCC self-insured workers' compensation insurance carrier, Crawford Insurance. This company denied me benefits base on the information that was reported by my employer. I appealed their decision but I have not heard from this company again.

EXHIBIT # 28
**February 21st and March 21st, 2003**

My employer, Dean Barnes and Ms. Lenn Arnold, Personnel Assistant, both willfully delayed to report pertinent information has jeopardized me from receiving my benefits. The employer section page 1 and 2 were filled with errors and omissions which has delayed processing my application. Lenn Arnold stated in the application that I was entitled to receive workers' compensation benefits, however; CCC's self-insured , Crawford Insurance denied my claim as not work related. I am petitioning the law to investigate this gross misuse of authority by Dean Barnes and Lenn Arnold. I have suffered mentally and financially distress. My SURS application– was received April 14, 2003- has been pending medical review over 120 days. I have been without any income since February 2003.

EXHIBIT # 29
**March 7, 2003**

I was denied my wages because I would not sign a statement in Olive –Harvey College payroll department stating that I had returned from my medical leaves. I filed a charge with The Department Of Labor. I was finally issued and received my wages " the off cycle check" on March 28, 2003.

EXHIBIT # 30
**May 30, 2003 - July 31, 2003**
Dean Barnes continued to harass me requiring me to wait long periods of time and still refusing to sign two required documents: CCC 's Leave Extension Request form and Payroll Status form on the date I submitted them for review. Prior to May 30, 2003, my immediate supervisor, Asst. Dean Ann Williams had been signing these forms without any problem.

EXHIBIT # 31
**August 22, 2003**
I have been denied my retroactive pay increase to July 1, 2002 that was Board approved July 2003 and my retention differential pay.

EXHIBIT # 32
**August 24, 2002**
An Adult Educator mandatory staff development workshop was scheduled for this day. I had to attend or face being fired according to the department. I had surgery scheduled on this day.

EXHIBIT # 33
**January 7, 2003**
According to Dean Barnes's letter of 1-07-03, she became aware of my needs for accommodations for my disabilities as a result of injuries that began and persisted on the job accidents of July 18, 2000.

*

EXHIBIT # 34
**May 3, 2002**
I attended an approved workshop –Coping with GED Math – the department paid the fees and travel expenses but did not compensate me in wages.

768-353-2130
JAN. 15, 2004

Exhibit #20

Insert correction

Should read:
          A staff meeting was scheduled
When I was off duty and had to go
the doctor for therapy. I asked Dr. Harvey
if there were dead line information
to be discuss at the meeting.

Exhibit #21

          Insert correction

- State agency, Attorney General office
(312) 814-3000 on 2/4/03
Mr Dan Carter, (312) 814-1528
814-8537 and a later return call.

- Unit 5 News.
          I left a message on Renee Ferguson's
          voice mail on 7/4/03 after I heard her
          Report of "Ghost students reads."

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 210-2003-35135 |

| | | |
|---|---|---|
| **Illinois Department Of Human Rights** | | and EEOC |
| *State or local Agency, if any* | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Ms. Jerlene Harris** | **(708) 333-2130** | **10-15-1946** |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| **15313 Ashland Harvey, IL 60426** | | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **CITY COLLEGES OF CHICAGO - OLIVE HARVEY COLLEGE** | **500 or More** | **(773) 291-6700** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Olive Harvey Skills Center 10001 South Woodlawn Avenue Chicago, IL 60628** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **09-02-2003** | **09-02-2003** |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was employed by the Respondent since December 27, 1987, most recently as an Adult Educator. On August 25, 2003 I filed an EEOC charge against the Respondent (EEOC Charge No. 210-2003-34923) regarding disability discrimination. On August 29, 2003 I was released to work. On September 2, 2003, Respondent refused to allow me to return to work.

I believe that I have been retaliated against and discriminated against on the basis of my disability in violation of the Americans with Disabilities Act of 1990.

RECEIVED EEOC

SEP 0 4 2003

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Sep 04, 2003**     *Jerlene Harris*<br>Date         Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year )* |

Jerlene Harris
15313 Ashland
Harvey, IL 60426
708-333-2130

CHARGE OF DISCRIMINATION/*Retaliation*
EEOC
## 210-2003-34923

Notes regarding treatment at olive –Harvey College to be re-instated in the position of Adult Educator with "light duty " per Dr. Xia's statement.

August 29, 2003 Friday at approximately  4:43 pm., I signed the guest book with security at the front entrance desk at Olive –Harvey College. I was bring my doctor's statement to return to work on a 'light duty base " I had to report to Martha J. Barnes, Dean of the Adult Education Program, who was in her office when I arrived. I submitted the statement to Barnes after she read it she stated that the department did not have 'light duty'. We left her office to go to the personnel department that was closed for the day. We then went across the hall to the President's office there Barnes gave this statement  - to the President's secretary- " We don't have light duty in the department do we?" Ms. Johnson, secretary, replied that she did not know and that Barnes should check with Lenn Arnold, personnel assistant. We went back to Dean Barnes's office where she refused to record her statements to me  in writing regarding the " light duty " issues. She wrote two comments on the doctor's statement but she did not use hers initials. After I left the building and was reviewing the document I noticed there were no signatures below neither comments on the doctor's statement. I returned to Barnes's office and pointed out theses omissions of her signature and the clearly wrong initial "ZLP arms" were not her correct initials. Barnes verbally objected stating that is was her initials MJB, She then signed her name at the top of the paper but at the bottom she made the P a B and spelled out Barnes. I finally left her office feeling another day of harassment.

September 2, 2003, Monday *Tuesday*, I went to Olive-Harvey College today to see Lenn Arnold to be re instated to work with 'light duty' per Dean Barnes on August 29, 2003. At the personnel office,  I met Ms. Clark who stated she was Ms. Arnold 's helper. I told her the nature of my visit she asked me to have a seat  while she get  the paperwork together. While , I was waiting in the small waiting area between the President's office and the personnel office, I notice Mary Melton Williams, Dean Barnes' secretary, go  into Ms. Clark 's office where they held a long conversation. When Ms. Williams left the office, Ms. Clark came out to inform me that I had to see Dean Barnes about the nature of my visit. I asked Ms. Clark to sign my paper for verification that I did report to the personnel department on 9-2-03 she refused, in fact ; she forgot her title when I want to take note regarding her comments. I went to Barnes's office she  instructed me to return at 1:05pm for a meeting regarding returning to work on LIGHT DUTY base"

1

At the afternoon meeting 9-2-03 from 1:20to 2:45pm. , Ms. Hawkins, steward, Ms. Ann Williams , Asst. Dean, Dean Barnes , William Brown, witness for Harris, Jerlene Harris, and Eugene Nichole, Manager of Human Resources Central Office 312-553-2874- via telephone -.

I was not re-instated today, Mr. Nichols and Martha J. Barnes both agreed not to sign or initial my application for re-instatement to my position as an Adult Educator with Olive-Harvey College pending the affects of my meds on my thinking to perform the duties of the job- which I reported were in the process of being change and I did not recall the names nor did I know the side affects of the meds since I WAS NOT TAKING THEM YET, specify information was required about the orthro- chair and it must be available before I could return,  and if there was an available assignment – according to Asst. Dean Williams ,  my previous assignment has been given to someone and that my lock will be broken off the cabin in the classroom.

I requested for a SURS ' DISABILITY PACKAGE AND AVAILABILITY TO SUBSTITUTE FORM I WAS NOT GIVEN NEITHER.

Ms. Hawkins slept most of the meeting; her only comment pertained to a grievance meeting on 4-1-03 in support of Dean Barnes untrue statement.

Dean Barnes's letter of January 7, 03 and Dr. Xia's medical statement December 27, 2002 clearly indicate that the orthopedic chair was needed for me.

*Jerlene Harris*

Case No. 03-E-122

City of Chicago
COMMISSION ON HUMAN RELATIONS
740 N. Sedgwick, 3rd Floor
Chicago, IL 60610
(312) 744-4111 [Voice] / (312) 744-1088 [TDD]

## COMPLAINT

| COMPLAINANT'S NAME | TELEPHONE NO. |
|---|---|
| Jerlene Harris | (708) 333-2130 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE |
| 15313 Ashland | Harvey, IL 60426 |

| RESPONDENT'S NAME(S) | TELEPHONE NO. |
|---|---|
| City Colleges of Chicago, Olive Harvey Campus | (773) 291-6700 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE |
| 10001 S. Woodlawn St. | Chicago, IL 60628 |

DISCRIMINATION BASED ON (CHECK AS MANY AS APPROPRIATE)

| | | |
|---|---|---|
| ( )-RACE | ( )-COLOR | (X)-SEX |
| ( )-AGE | ( )-RELIGION | (X)-DISABILITY |
| ( )-NATIONAL ORIGIN | ( )-ANCESTRY | ( )-SEXUAL ORIENTATION |
| ( )-MARITAL STATUS | ( )-PARENTAL STATUS | ( )-MILITARY DISCHARGE STATUS |
| ( )-SOURCE OF INCOME | ( )-RETALIATION | ( )-GENDER IDENTITY |

DATE DISCRIMINATION TOOK PLACE-LATEST DATE IF CONTINUING

March 7, 2003 and ongoing

TYPE OF COMPLAINT

( X )-EMPLOYMENT  ( )-HOUSING  ( )-PUBLIC ACCOMMODATION  ( )-CREDIT  ( )-BONDING

THE PARTICULARS ARE (ADD EXTRA PAGE/S AS NEEDED)

1.    I was hired by Respondent to work at the Olive Harvey Campus. My last job position was that of an Adult Educator, working in the Adult Education Program. I am presently disabled. As the result of a work related accident which occurred on July 18, 2000, during work hours on Respondent's premises. I suffer from chronic back pain. I cannot sit or stand too long. I also have carpel tunnel syndrome on my left wrist, and I suffer from depression.

I swear or affirm that I have read this Complaint (this page and _1_ additional page/s) and that it is true and correct to the best of my knowledge, information and belief.

_Jerlene Harris_      _August 26 2003_
Signature of Complainant      Date Signed

CCHR Complaint 2                                                          Case No. 03-E-122

2.      I re-injured myself as a result of a fall on February 3, 2003, when I fell in Respondent's washroom.
        The fall aggravated my existing condition of lumbar disc disorder, carpal tunnel syndrome and
        depression. I am in constant pain. I was forced to take a medical leave because I am incapacitated. I
        followed my physicians advice.

3.      On or about February 26, 2003, Crawford Insurance Company, the company that processes workman's
        compensation claims for Respondent, informed me by letter that they were processing my worker's
        compensation claim and that Respondent wanted the claim to be processed in a timely fashion.
        However, On March 10, 2003, Crawford Insurance informed me by letter that my workman's
        compensation claim was denied because my injury was non-work related. I believe Respondent
        willfully sent conflicting information to Crawford Insurance Co. by failing to fill out the required
        information that led Crawford to deny my workman's compensation claim.

4.      I applied for disability through the State University Retirement System (SURS). I was informed by
        Lenn C. Arnold (female, non-disabled), Personnel Assistant, that I was eligible for disability benefits
        through SURS. Dean Martha J. Barnes (female, non disabled), agreed at the time with this assessment.

5.      On March 6, 2003, I sent a letter Arnold, to bring to her attention the errors she and Dean Barnes made
        on my SURS disability which omitted required information which could interfere with the approval
        of my disability benefits. Since I applied for disability benefits, Dean Barnes and Arnold, have
        willfully mishandled my disability application by omitting important information which has delayed
        the application process. I believe that this omission on their part was willfully done to prevent SURS
        from sending me the monthly benefits. I was treated in a different manner from Uwabunkoyne
        Adighibe (a disabled male co-worker), who applied for disability benefits in April 2003, and has
        received disability benefits without delay.

6.       SURS received my disability application on April 14, 2003, which has been pending for review for
        over 120 days. The failure to receive any income since February 2003, has caused me mental anguish
        and financial difficulty.

7.      I sent a certified letter to Dr. W. Watson (male, non-disabled), Respondent's Chancellor, to inform
        him of the problems I was experiencing in getting Dean Barns to sign the required Leave Extension
        Form and the Payroll Status Form requests.

        Dean Barne's failure to comply with Respondent's Personnel Rules and Policies concerning medical
        leave and payroll status requests is discrimination covered by disability.


        The relief I seek is:

        a) To receive disability and medical benefits; and

        b) All other relief available to me under the law.

ASSIGNED CODES SY/C
Administration ___ 1
Faculty ___ 2
Staff ___ 3
Students ___ 4
Non-Students ___ 5

City Colleges of Chicago

**DEPARTMENT OF SECURITY AND SAFETY**

PAGE 1 of 2

2. Incident Report Number

*2291*

*Olive Harvey*

1. Name of College/Facility

| 3. Date Investigation Completed |
|---|
| Day _03_ Mo _FEB_ Yr _03_ Time _1400_ |

| 4. Incident | 5. Location of Incident | 6. Date of Incident |
|---|---|---|
| *Injury* | *Women's Washroom* | Day _03_ Mo _FEB_ Yr _03_ Time _1255_ |

| 7. Victim's Name | 8. A/C | 9. Sex | 10. SSN# | 11. Date of Birth | 12. Address/Room # | 13. Telephone # |
|---|---|---|---|---|---|---|
| *Harris, Geraldine* | 2 | F | 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 | | 601 | 708-333-2130 |

| 14. Person Reporting Incident | 15. A/C | 16. Sex | 17. SSN# | 18. Date of Birth | 19. Address/Room # | 20. Telephone # |
|---|---|---|---|---|---|---|
| *Eiland, Dale* | 3 | M | | | | 773-291-6348 |

| 21. Witness Name | 22. A/C | 23. Sex | 24. SSN# | 25. Date of Birth | 26. Address/Room # | 27. Telephone # |
|---|---|---|---|---|---|---|
| | | | | | | |

| 28. Offender's Name | 29. A/C | 30. Sex | 31. SSN# | 32. Date of Birth | 33. Address/Room # | 34. Telephone # |
|---|---|---|---|---|---|---|
| | | | | | | |

| 35. Offender's Address | | | | | | 36. Telephone # |
|---|---|---|---|---|---|---|
| | | | | | | |

| 37. Charges, if in Custody | 38. Court Date/Time | 39. Court Branch/Location |
|---|---|---|
| | | |

Type of Injury/Illness: _BACK INJURY_
Body Part Injured: _BACK, LOWER_
First Aid Received: _____
Description of Accident: _____
Property Damage Information, if applicable: _____
Environmental Condition: _____
Was Workers' Compensation Referral Card Given: Y (N)    Police Report Made: Y (N)    Report # _____

**40. NARRATIVE:**  Give description of entire incident, if a personal injury, ensure a check of the area is made and report by Security.
Answer questions — who, what, where, why and how. List additional victims and offenders in narrative - if needed, use other side.

Report Allegations:

*In summary victim related to R/o that while removing herself from the bathroom, she lost her footing and slipped onto the toilet causing injury to her lower back. Ambulance number nine (9) arrived on scene and transported the victim to Trinity hospital. R/o, along with Mrs. Steward, a female faculty member investigated to see if there was any slippery substance on the floor. In fact, the floor was dry.*

✓ Continued on Reverse Side

| 41. ✓ Routing System | | |
|---|---|---|
| ___ President | ___ Victim's Dept Head | 42. Signature/Reporting Officer |
| ___ Business Mgr | ___ Engineer | 43. Approval/Supervisor |
| ___ Attorney/General Counsel | | *Jackson* |
| ___ Other (Specify) | | 45. Reviewed/Director |

Copies Made and Forwarded By _____

44. Date Report Prepared
Day _03_  Mo _FEB_  Yr _03_  Time _1500_
On _____

*61*

Revised 10/98

Subject: Jerlene Harris'Fall
Date: Tue, O4 Feb 2003 13:36:43 -0600
From: "Martha Barnes" <mbarnes@ccc.edu>    Internal
Organization: City Colleges of Chicago
To: Charles Green <cgreen@ccc.edu>, Therese Bushner <tbushner@ccc.edu>,
Maurice Rodgers <mrodgers@ccc.edu>
CC: stjohnson@ccc.edu


FYI.

You may want to forward the security report to legal.  She already has a
couple of legal issues/Workman's comp with CCC.


Subject: JHarris
Date: Tue, 04 Feb 2003 10:59:28 -0600
From: "Ann Williams" <annwilliams@ccc.edu>
Organization: City Colleges of Chicago
To: Mbarnes@ccc.edu

On Monday Feb. 3, 2003 around 12:50 p.m., Ms. Jerlene Harris had a fall
in a stall in the washroom in building 6. An ambulance came and took her to Trinity Ho
I spoke to her this morning.  She said that she was in a squatting
position and was reaching for paper and  her foot slipped.  She
suggested that something might have been on the floor.  She said that
her foot went up  and she fell back into the toilet.
She claimed that this caused her great pain.  She further stated that she
called her doctor and that he said for her to go to the emergency room.
She stated that she went to the emergency room and was given strong pain
medication and was referred back to her physician.
She called this morning. She reported that she is in too much pain to
come to work, and that she will call me daily to keep me informed.


Security was called and Officer Dale Island reported that he went into
the washroom to investigate and did not find any liquid on the floor.
In fact, it was dry.

Ann

# Memo

**To:** Dean Barnes

**From:** Jerlene Harris, Adult Educator

**CC:** Mrs. Ann Williams, Asst. Dean

**Date:** February 4, 2003

**Re:** Accident on February 3, 2003 in blg. 6

On February 3, 2003, approximately at 12:55pm, I was in building six women restroom in the stall where my foot slipped in something on the floor when I turned to get the tissue paper. My back area hit the toilet several time before I could gain control. I was taken to Trinity Hospital by ambulance for emergency treatment. Because I was experiencing lots of pain, the emergency room doctor recommended additional rest with medications and suggested I have a follow-up with my treating physician.

I made an accident report with Olive-Harvey Security. A student and I verbally told Dr. Harvey, supervisor about the accident.

I was very disturbed that I did not receive any compassion from my supervisor to call my doctor or the ambulance to transport me to the hospital.

1

March 6, 2003                                                         Certified Mail

Ms. Lenn Arnold, Personnel
Olive-Harvey College
10001 So. Woodlawn Ave.
Chicago, IL  60628

Dear Ms. Arnold,

Re:  State Universities Retirement System (SURS) Application for Disability Benefits.

On February 25, 2003, I received only the Employer Section (Part 1 and Part 2) of SURS
Application for Disability Benefits.  The instructions for completing the application clearly
states "Do not separate the pages of this application", I was only given the  Employer
Section (Part 1 and Part 2).  In the Section that I received, portions of the application was
left blank, information not specified, statements not complete, categories of the positions
and the selections of time spent are unclear, and statements that did not describe correctly
the physical aspects of my "typical required workday".  According to the SURS
instructions, "If this application is not fully completed it will be returned for completion."
After your review and at your request, I will return the original document.

**Employer Section Part 1** reflect errors.  In Item 5 - Date disability occurred should be
7/18/2000.  Item 6 – last day paid is incorrect.  I have not been paid for the  last day
worked.  Item 9 - is also incorrect.  "01/19/03 to 02/01/03" is not the last payroll period
for employment for 02/03/03.  Item 11 please explain what Fortis Benefits are.  Item 13
failed to provide policy#, Name, address, and phone numbers of Worker's Compensation
Administrator.  Item 14 - not complete, i.e. weekly benefits $ amount and effective date
omitted.  According to SURS' representative this information MUST be given.  (1(800)
ASK SURS).  Item 15 can not be left blank.  There should be Remarks or "N/A", Item 16
- Title of Employer Representative is omitted.

**Employer Section Part 2** (Physical/Non Physical aspects of job to be completed by
Claimant's Supervisor) Claimant's Occupation left blank.  It should read Occupation:
Adult Educator.  Item 1- typical workday.  It is unclear which position matches my
alternate position options.  (One position response has been omitted).  Item 2 - Claimant
Must: The positions and time varies.  When working with adults that are reading below
the 3rd grade level and when their comprehension skills are low, they require constant one
on one interaction, which requires me to constantly bend/stoop and crouch.  The
evaluation does not take this into consideration.  Stated as is, it cannot be determined
what response matches what position.  Some positions do not have a response.  Item 3 -
Claimant Must: The weight field not completed.  You cannot determine what field
matches what.  Item 4 - omission of use of feet.  Again working with students that require
one on one interaction, does require a lot of walking to give them the attention and the
help that is needed.  Item 5 - Omission of use of hands.  Hands are required in any
classroom to write, grasp pencils, objects, direct, etc. Item 6 - Omission of fluctuating

Ms. Lenn Arnold, Personnel
Re: SURS Application for Disability Benefits
Page 2


temperatures in the classroom, traveling from building to building, exposure to dust in the classroom and bird dropping surrounding the external walkways of the building. Item 7 - The responses are not accurate. Item 8 - is also inaccurate. The answer should be yes. The job does require demand for prolonged high visual acuity. This is true when completing Official SARs. Supervisor's Title omitted from document.

Thank you for your cooperation and immediate assistance in completing the application and process.

Sincerely,

Jerlene Harris

Ms. Jerlene Harris, Adult Educator
15313 So. Ashland Ave.
Harvey, IL 60426

cc: Dr. Charles Green, President
    Ms. Martha J. Barnes, Dean of Adult Education Program

**State Universities Retirement System**　　　　**APPLICATION FOR DISABILITY 1**

## EMPLOYER SECTION – PART 1 (Please print in BLACK INK)

All questions must be completed. If information is an estimated date, please indicate "est" beside it.

1. Name of employer:　City Colleges of Chicago, Olive-Harvey College

2. Name of claimant:　Jerlene Harris

3. Social Security #: 336 - 38 - 5380　　4. Last day worked:　02 / 03 / 03

5. Date disability occurred: 02 / 03 / 03

6. Last day paid (including sick and/or vacation)　02 / 21 / 03　7. Effective date of leave 02 / 03 / 03
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　( this is the day after last day paid)

8. Is claimant disabled from performing the duties of their position?　☒ Yes　☐ No

9. Dates of last payroll period:　01 / 19 / 03　to　02 / 01 / 03

10. Basic monthly earnings: $2,322.33　Monthly basis ☐ 9 month ☒ 12 month ☐ Other＿＿＿＿＿＿
　　(This is the monthly rate they were receiving on last day worked)

11. Does claimant have any coverage(s) with Fortis Benefits? ☐ Yes ☐ No　Unknown

　　If YES, list type of coverage(s):＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

12. Have you and the claimant discussed reasonable accommodations which would allow a return to work?

　　☐ Yes ☒ No　Claimant's physician statement indicates she is unable to work

　　If YES, explain:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

13. Did this disability occur as a result of claimant's employment? ☒ Yes ☐ No ☐ Disputed

　　If YES, or under dispute, please provide policy#, name, address, and phone # of Workers's

　　Compensation administrator.＿＿＿ City Colleges of Chicago, 226 West Jackson Blvd.

　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

14. To the best of your knowledge, is the claimant receiving, or entitled to receive benefits from any of these
　　sources?

　　SALARY CONTINUANCE ☐ Yes ☒ No

　　Amount $＿＿＿＿＿　Per＿＿＿＿＿　　From＿＿ /＿＿ /＿＿　to＿＿ /＿＿ /＿＿

　　WORKERS' COMP ☒ Yes ☐ No　Weekly benefit $＿＿＿＿＿　Effective date＿＿ /＿＿ /＿＿
　　　　　　　　　　　　　　Amt. of beneftis unknown at this time
　　EMPLOYER PAID INSURANCE CONTRACT ☐ Yes ☒ No

　　Amount $＿＿＿＿＿　Per＿＿＿＿＿　　From＿＿ /＿＿ /＿＿　to＿＿ /＿＿ /＿＿

　　OTHER ☐ Yes ☒ No＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

15. Remarks:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

16. Authorized Signature & Title of Employer Representative completing this section:

　　_[signature]_　　　　　　　　Lenn C. Arnold
　　(Signature)　　　　　　　　　　(Title)

　　773/291-6210　　　　773/291-6226　　　　02-24-03
　　(Phone)　　　　　　　(Fax)　　　　　　　　(Date)

(EX. 15)

**State Universities Retirement System**　　　　　　**APPLICATION FOR DISABILITY 2**

## EMPLOYER SECTION - PART 2 (Physical/Non Physical Aspects of Job - to be completed by Claimant's Supervisor)

Claimant's Occupation: _____ Jerlene Harris SS#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 _____

1. In a typical work day, give number of hours claimant spends in each of these positions and if claimant may alternate positions.

| Position | Total # of Hours | | May Alternate Positions | | | |
|---|---|---|---|---|---|---|
| Sitting | 1 ②3 4 5 6 7 8 | ☑At Will | ☐ 15-30 mins | ☐ Hourly | ☐Never |
| Standing | 1 ②3 4 5 6 7 8 | ☑At Will | ☐ 15-30 mins | ☐ Hourly | ☐Never |
| Walking | 1 ②3 4 5 6 7 8 | ☐At Will | ☐ 15-30 mins | ☐ Hourly | ☐Never |
| Driving | 1 2 3 4 5 6 7 8 | ☐At Will | ☐ 15-30 mins | ☐ Hourly | ☐Never |

2. **Claimant Must:**

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend/Stoop | | ☑ | | |
| Climb | ☑ | | | |
| Reach above shoulder | | | ☑ | |
| Kneel | ☑ | | | |
| Balance | ☑ | | | |
| Push/Pull | | ☑ | | |
| Squat | | ☑ | | |
| Crawl | ☑ | | | |
| Crouch | | ☑ | | |

3. **Claimant Must:**

| | | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|---|
| Lift Usual Amt. | 10 lbs. | | | ☑ | |
| Lift Max. Amt. | _____ lbs. | | | | |
| Carry Usual Amt. | 10 lbs. | | | ☑ | |
| Carry Max Amt. | _____ lbs. | | | | |

4. On the job, claimant uses feet for repetitive movements as in operating foot controls.
   Right: ☐Yes ☑No　　Left:☐Yes ☑No　　Both: ☐Yes ☑No

5. On the job, claimant uses hands for repetitive action such as:
   A. Right: ☐Simple Grasping　☐Firm Grasping　☐Fine Manipulation
   B. Left: ☐Simple Grasping　☐Firm Grasping　☐Fine Manipulation

6. Does job require working at Heights? ☐Yes ☑No
   Does job require exposure to marked changes in temperature and humidity or extremes thereof? ☐Yes ☑No
   Does job require exposure to dust, fumes, gases, chemicals? ☐Yes ☐No

7. Stress/Non Physical
   Stress level of position is: ☐Low　☑Medium　☐High
   　　　　　　　　　☑Occasionally　☐Frequently　☐Continuously

8. Does job require continuous demand for prolonged high visual acuity? ☐Yes ☑No

Signature/Title _Martha J Barnes_　　　Date _2/24/03_
　　　(Must be supervisor completing this form)

**Crawford**®

Lisa A. Pascale
Regional Service Center Mgr.

March 10, 2003

Jerlene Harris
15313 S. Ashland
Harvey, IL 60426

RE: Employee: Jerlene Harris
    Employer: Olive-Harvey College
    Acc Date: 02/03/03
    Our File: 2333-15990
    Our Client: 12381 – City Colleges of Chicago

Dear Ms. Harris,

Our office handles the worker's compensation matters for the above captioned employer.

Based upon information we have recieved it has been determined that the injury you sustained is not work related therefore any claim for benefits is denied under worker's compensation. We recommend you submit all bills to your group insurance carrier for processing.

If you have any questions please do not hesitate to contact me.

Sincerely,

CRAWFORD & COMPANY

Kathy L. Cushing
WC Adjuster
847-517-3016

cc: Olive Harvey College
    10001 S. Woodlawn Ave.
    Chicago, IL 60628
    Attn: Donna Sacco

October 2, 2002
Jerlene Harris
Adult Educator
Olive-Harvey College
15313 South Ashland
Harvey, Illinois 60426

Sue Schulz, President
AFSCME LOCAL 3506
City Colleges of Chicago
Adult Educators & Coordinators
111 North Wabash, Suite 2012
Chicago, Illinois 60602

Dear President Schulz:

My name is Jerlene Harris, Adult Educator at Olive-Harvey Campus, I have been a full pledged member since the onset of this union. My concerns now are that Local 3506 representative officials have failed to resolve my grievances 107-02 and 107-03 and to investigate discrimination/retaliation actions by the administration in the Adult Education Program at Olive-Harvey College which are conditions governed by the Collective Bargaining Agreement with City Colleges of Chicago. I have made numerous telephone calls to Zelda Traylor, Steward for Olive-Harvey Campus, Earl Sibar, Chief Steward, Katie Clay, legal representative ,and Sue Schulz, President. None of these contacts have led to a resolution of these grievances and discrimination/retaliation actions. The officials lack of action in a timely matter has set the stage for gross negligence which may have jeopardized negotiation to resolve these grievances. On August 1, 2002 I submitted a memo to Zelda Traylor and Earl Silbar both Officials of local 3506 to investigate the truth of grievance 107-02; however, this local has not replied.

I am seeking full compensation for lost wages for Summer 2002 of $788.95 and full compensation for four (3) all day approved professional development workshops I have attended. I am also seeking accommodations for my physical disabilities which was the result of a fall at Olive-Harvey College on July 18, 2000, and that all discrimination/retaliation actions that I have endured cease.

GRIVANCE 107-02 April 14, 2002 Compensation for approved Professional Workshop
   This grievance has never been addressed since I filed.

Adult Education Program Olive-Harvey College
Dean Martha Barnes has refused to give me compensation for an approved professional   development workshop held in Springfield, Illinois on March 6-8, 2002.

Additionally, I have attended three (3) full days of  approved professional workshops with no compensation given:
   ❖                          March 8, 2002 IACEA 23rd Annual Conference in Springfield, IL
   ❖                          April 19, 2002 GED 2002: MATH AND SCIENCE WORKSHOP
   ❖                          May 3, 2002 COPING WITH GED 2002 MATH


Article VI– Employment  Conditions

Section 1: Staff Development

   (a) ...while attending staff development activities, employees will be paid at their regular hourly rate of pay...
   ...The employees shall be paid for the time spent attending such activity or the employee's regularly schedule class time, Which ever is greater...
   (b) The Board will compensate employees for attending assigned professional development activities approved by the College (s). While attending such activities employees shall be compensation at the appropriate hourly rate... approved in advance by supervisor, upon the submission of the appropriate documentation...


Article III-- Prohibited Actions

Section 1: Discrimination

... (age , physical handicap)...

2

Summer 2002 and Fall 2002 The Adult Education Program continued to disregard my partial disability ( Dr. Levy 's letter of July 25, 2001 described my medical limitations) and my letters regarding lack of training to be assigned to teach reading and math at level at 0.0-2.9 these students have very special needs / from our general student population.

Dean Barnes continues to make statements to me that I move too slow in performing a given task and " If I come to work District 508 policy is I SHOULD BE FIT FOR DUTY" and "There are no differences in teaching any student at any level in our GED program." These COMMENTS have been very painfull to me .

No accommodations have been given to me to prevent additional injury. I bring pillows from home to sit on and to place in my lower back area to help me cope with my pain. I use box tops on my desk to elevate the materials when I write. Most of the time I am not successful with this procedure. When I must bend over the desk to write, my pain level increases. When I write on the blackboard my back seems to split in half which increases my pain level.

Article XIV—Miscellaneous

Section 7: Health and Safety

The Board ...will endeavor to provide a safe work environment at Board facilities...

On August 14 I was directed by Ms. McGhee, Manager, to lift a box again which contained students' SARS and samples of their work. I was in the office of Mary Johnson, data entry clerk ( Ms. Barksdale was also present in the room , Mr. Davis ,co-worker was near by). I was in a lot of pain which increased after I initially lifted the box. I told the manager I was in pain and that I was currently being treated for lower back injury and carpal tunnel in my left hand three times per week. I was still instructed by the manager to move the box from that room or she was going to write me up. I carried the box across the hallway dropping it on the floor inside of my classroom. I used my foot to push the box until I reached the space under my desk. On the evening of August 15 I returned to O-H campus to complete the new assignment on the students' SARS. It was very difficult for me to bend to get the material from the box. I tried to lift the box with my body and right hand but the box began to fall. I tried to catch it with my left hand which increased the shooting pain in my left arm and hand. I kept

applying cold water to the areas to decrease the pain, but it did not help very much. I finally completed the assignment and reported to the manager. She then directed me to bring the box over 80ft and lift it to a shelf above my head. I told her I was experiencing shooting pain down my left arm , but she insisted that I bring as much as I could of the contents until I emptied the box. I refused to lift any amount; I offered to call security to lock my classroom door and I left the building at 7:45pm.

Article I-- Union Rights

Section 6: Information Provided to Union

Monthly , the Board shall notify the Union , in writing , of the following personnel transactions involving bargaining unit employees: date of hire; employment status (including changes); hours of work; Social Security numbers ; phone numbers; addresses ; and campus locations.

Grievance 107-03 Seniority July 17, 2002

Article VIII-- Continuous Services

Section 3: Posting of Vacancies

Whenever the Board learns at least three(3) weeks prior to the beginning of a module , semester, or equivalent that a new assignment will be made or there will be a teacher to be announced T.B.A.) class, the Board shall post a notice a notice of such anticipated assignment or class. The notice shall be posted at the district office... at a place accessible to employees during regular business hours and on the approved bulletin board at all Colleges, and shall be provided to the Union....

RULES FOR THE MANAGERMENT AND GOVERNMENT OF THE CITY COLLEGES OF CHICAGO- adopted July 1999...

3.10.1 FILING OF TEACHING VACANCIES IN THE ADULT LEARNING SKILLS PROGRAM (ASLP)

4

a. A qualified non-probationary Adult Educator who applies in accordance with the procedures in the posting and who is currently performing satisfactorily but who is assigned fewer than twenty-four (24) hours per week shall be given the assignment....

Summer 2002

My assignment hours were reduced to twelve which gradually increased to twenty-one hours per week without notice for this term. I submitted a letter May 9 of interest in all TBA positions (no posting available), and I completed a Substitute Availability Form May 28. I was overlooked while other Adult Educators with less than fourteen years of continuous services and who had less than a twenty-four hours work assignment prior to this term with this department were selected (asked to work TBA positions).

On July 30 Dean Barnes finally allowed a meeting (without the recording of the minutes as I had requested) When Dean Barnes was asked by me and the Union Steward, Ms. Traylor , what bases were used to determine how other Adult Educators were selected to work the Summer term, her responses ranged from no answer to evasive.

At this meeting, Dean Barnes continued to remind me of the" District 508 policy If I come to work I SHOULD BE FIT FOR DUTY."

## Article VI-- Employment Condition

## Section 2: Material, Equipment ,and Facilities

...Employees Shall Not be required to produce or supply those items at their own expense....

Fall 2002

The administration in the Adult Education Program refused to give me enough material (xerox paper to be prepared for the first week class lessons : class syllabus for six courses and pre assessments exams ) to complete a requirement or face a displinary action per Ms. Arsenia Williams, manager. Dean Barnes was contacted by telephone; she stated that she must first talk with Ms. Williams, manager, regarding my complaint.

5

Dean Barnes was called again about ten minutes later; however, she had left and her secretary , Ms. Melton, told me the Dean had spoken to Ms. William and that I should go get the supplies from Ms. Williams who refused me again. I called district office for relief. I was in a mental state of frustration and suffering from severe pain in my lower back, left buttocks area and left hand. I had been touch typing with one hand for three hours or more .(I had worked three hours over-time by this time.) I feared being written up if I did not turn in this required assignment before I left for home. I was told to contact Dr. Green, President of Olive-Harvey College which I did. I left a detailed message for Dr. Green with the secretary, Ms. Johnson . One of my co-workers, Mrs. Neeley, felt sorry enough for me and gave me her supply of paper to complete my assignment.

On September 3, 2002, I was called out of my classroom to have a meeting with Dean Barnes regarding my complaint; however, she also refused to give me an additional ream of paper. For the remaining first week of Fall 2002, I continued ask for paper so I could be prepared for the second week lessons I was continually refused by the manager, Ms. Williams. I felt my only solution was to use my wages to purchase a case of paper at the Office Max store to fulfill my assignment obligations.

Thank you for taking the time to review my ordeal at Olive-Harvey College in year 2002. I look forward to hearing from you to help bring resolution to this situation .

Respectfully,

Jerlene Harris

Cc: Gerald W. McEntee, International President AFSCME
Henry L. Bayer, International Vice President AFSCME

October 2, 2002

Sharon Prayor
Human Resources Manager
City Colleges of Chicago
226 W. Jackson
Chicago, IL 60604

Subject: Jerlene Harris

Dear Ms. Prayor:

My name is Jerlene Harris, and I am currently employed as an Adult Educator with City Colleges at the Olive-Harvey campus. I am asking for recognition of and accommodation for my partially disabled status due to an injury sustained on the job. On July 18, 2000 I slipped and fell while exiting the elevator; there was some sort of spillage on the floor. Since that date I have had severe low back pain and a problem with my left hand (later diagnosed as carpal tunnel). I have seen several doctors for the treatment of these conditions, and they all agree that I have a partial disability and have made recommendations that I have light duty, be off work for approximately 6 weeks, and have aggressive physical therapy. While I have been given the aggressive physical therapy, the other recommendations have not been followed; in addition, I believe I have been discriminated against because my condition seems to represent a "nuisance" to my department. Examples:

- Dean Barnes comments stating no accommodations could be made for me, that if I come to work I should be "fit for duty." These statements were made to me both privately and in the company of other workers.
- The reduction of my assigned work hours from 24 to 21 which I felt violated my seniority rights as several people with less seniority were given 24 hours.
- Assigning the most challenging class sections to me to teach when I have not been given adequate training (as had the prior teacher).

In September 2000 before I was diagnosed with a partial disability, I spoke with Dean Martha Barnes about trying to make some small accommodations to help with the pain I was experiencing from the injuries I sustained in the fall, e.g., better seating, a desktop podium so I would not have to bend over to write. Dean Barnes was not helpful stating that there were no accommodations that could be made to assist with my injuries. So, I continued to work in severe pain for the next 12 months. It was during this time that the recommendations were made that I should have light duty. I again went to see Dean Barnes who after consultation with Lynn Arnold who I believe is the personnel representative assigned to Olive Harvey, stated that the department does not have light duty and thus could not accommodate the physicians' recommendation for such. At no time did anyone mention the possibility of any type of leave WITH pay. In fact, I was told the only way I could take any time off would be leave WITHOUT pay. When I

asked about Workmen's Compensation, I received no clear-cut answers. Ms. Arnold told me she would check into it and get back to me; she did not.

By July 25, 2001 I had been diagnosed with a partial disability. However, to this date I have still received no accommodation to ease my pain at work. In fact, certain other situations have caused me additional injury on the job (10-03-2001, student slammed entrance door on my right shoulder and arm; 8-14 and 8-15, 2002, manager/supervisor directed me to pick up a box of student records weighing approximately 18-20 lbs under threat of disciplinary action if I did not. Manager/supervisor was aware and reminded of my back injury).

I am writing to ask your assistance for accommodation.

Sincerely,

Jerlene Harris



**City Colleges of Chicago**

**Office of Human Resources**

October 15, 2002

Ms. Jerlene Harris
15313 Ashland Ave
Harvey, IL 60626

RE:     EEO Complaint

Dear Ms. Harris:

This is to notify you that I received your discrimination complaint on October 15, 2002.
I will be contacting you in the near future to begin an investigation into the allegations
contained in your complaint.

Please be advised, as the EEO Officer for the City Colleges of Chicago, I will conduct an
investigation into your complaint and, if feasible, will complete the investigation within
45 calendar days of the date your complaint was received. Your complaint will be held
in confidence. Any information contained in your complaint, as well as any information
obtained during the course of my investigation, will only be revealed to individuals with
whom it is necessary to facilitate resolution of your complaint.  You will receive written
notification when the investigation is completed.  That notice will also inform you
whether your complaint is upheld.

Please be further advised, you are protected from retaliation as a result of having filed
your complaint.  In the event you feel any retaliatory action has been taken against you as
a result of filing your complaint, contact my office immediately.  I can be reached at
312/553-2869.

Thank you for your cooperation in this process.

Sincerely,

Sharon E. Prayor
Equal Employment Opportunity Officer

# BRIDGEPORT PAIN CONTROL CENTER
### 3150 SOUTH HALSTED STREET
### CHICAGO, ILLINOIS 60608-6602

TELEPHONE: 312-326-1648
FAX: 312-326-6728

July 25, 2001


ATTN:   Martha J. Barnes
        Dean of Adult Education Program


RE:  Jerlene Harris


Dear Dean Barnes:

I have been treating Jerlene Harris since fall of 2000 for a serious low back condition caused by a fall on the premises of the college.  She has had a difficult time coping with what should be considered a partial disability.  She is unable to lift things and perform repetitive bending, twisting and walking.

Ms. Harris described the special needs of students in the literary level and the movements that would be required of her to service the students such as bending, walking and turning and some lifting of materials.

In my opinion she needs to be given a lighter assignment.

Sincerely


Paul B. Levy, D.C.
PBL/cpc

Dr. W. Watson, Chancellor                                                    June 7, 2003
City Colleges of Chicago
222 W. Jackson Boulevard
Chicago, Illinois 60606


Jerlene Harris
15313 Ashland
Harvey, Illinois 60426

**CERTIFIED MAIL**


Dear Dr. Watson:

On May 30, 2003, I, Jerlene Harris, Adult Educator at Olive –Harvey campus,
experienced an ordeal that no worker should have to undergo. I went to the Adult
Education Program to get my immediate supervisor's signature on two documents: City
College of Chicago Leave Extension Request Form and the Payroll Status Form. After
waiting over forty-five minutes for the Asst. Dean Ann Williams to return from lunch.
She informed me that Dean Barnes wanted to see and sign my medical leave forms.
Mrs. Williams telephoned Dean Barnes and told her that I was in her office and that I
had my doctor's statement to support another leave extension request. During their
conversation, Asst. Dean Williams clearly stated that I was on my way to the main
building where Dean Barnes's office is now located.

I felt very uncomfortable with this new change since Asst. Dean Williams has always
signed these forms and provided me with copies. (CCC payroll status form and Leave
Extension request forms from 2/3/03 –5/31/03 attached)  I would take the <u>ORIGINALS</u>
forms to the Personnel Department and leave the campus. Mrs. Arnold would usually call
my resident when these forms were completed with signatures of Dean Barnes and Dr.
Green, President.

Because I felt so uncomfortable with this change, I asked a stranger sitting on the bench
in front of the main building to be a witness while I was in conference with Dean Barnes.
I entered the main building at 2:55 p.m. in Dean Barnes's front office, upon my arrival I
was told by her secretary; Mary Melton that <u>Dean Barnes had went to lunch.</u>   Dean
Barnes had requested that I leave the forms, I stated that I could not do that as there was a
time restriction and clearly states job abandonment. I asked the secretary to call Asst.
Dean Williams to see if I could bring the forms back to her for her signature, since Dean
Barnes had left for lunch. According to Mrs. Melton (secretary) Asst. Dean William
never returned her call. After waiting awhile, I asked but I could not get a clear concise
answer as to when Dean Barnes would return from lunch.

Mrs. Melton then told me that Dean Barnes was in her rear office with the lights off
having lunch. At this point, I went to President Green 's office to get help with my issue.
Ms. Johnson, secretary stated President Green had left earlier due to ill health. I asked for

1

the telephone numbers of Dr. Watson, Chancellor and Dr. Valerie Roberson, Associate Vice Chancellor of Adult Education & Family Literacy Programs. Upon the receipt of their numbers, Ms. Johnson then informed me that Dean Chappell, Dean of Continued Education was in charge of the campus in the absent of President Green, I went to Dean Chappell's office and reported my ordeal and allowed her to read my doctor 's statement of my medical condition.

I pointed out the required responsibility I had that was spelled out on the form and that I needed documentation that I had complied with the rule. According to CCC Leave Extension Request form... An employee will be considered to have abandoned their position and may be subject to disciplinary action if they do not return to work or submit another Leave Extension Request form on or before the end date of this requested leave. My leave extension request ended Saturday May 31, 2003. Dean Chappell then made a telephone call to Dean Barnes and shortly thereafter left her office with the original forms to go to Dean Barnes's office. Dean Chapell was gone for a short period of time, when she returned she had a copy of my forms with only a dated stamped received affixed to these documents. (5/31/2003 to 6/30/2003 CCC Leave Extension Request Form attached) She apologized for my ordeal and promised that she would make sure I received the completely signed forms next week. It was 3:30p.m. I was leaving Olive – Harvey College without the signature of my immediate supervisor and /or Dean Barnes. To date June 7, 2003, I have not received the signed copies.

I feel this ordeal was in violation of City College of Chicago's policy according to CCC Employee Manuel page 46 Leave Procedures requesting a leave...   Submit completed forms and any other required documentation, ...to immediate supervisor for review and signature.

This ordeal was a form of torment and intimidation, which caused me mental aggravation something I feel SHOULD NOT HAVE BEEN allowed. I feel that Dean Barnes's actions were not indicative of the policies and standards set forth in the manual of City Colleges of Chicago.

Thank you for any consideration given to this matter.

Respectfully,

Jerlene Harris

Cc: Dr. Valerie Roberson, Associate Vice Chancellor
    Adult Education & Family Literacy Program
    City Colleges of Chicago  - 9th floor
    Chicago, IL 60606

2

April 10, 2003


General Legal Council
City Colleges of Chicago
226 West Jackson Blvd.
Chicago, IL   60606

Jerlene Harris
15313 South Ashland
Harvey, IL 60426

**RE: Grievances # 107-03 July 17, 2002 and # 107-02 April 14, 2002 and charges of discrimination/retaliation contained in correspondence to AFSCME LOCAL 3506 President Sue Schulz dated October 2, 2002.**

Dear Council:

I received a telephone call on April 10, 2003 from Mr. Jose Alverez, investigator with Illinois Educational Labor Relations Board, stated the above grievances and charges of discrimination/retaliation will be heard at Level II in the grievance procedure on April 22, 2003 at 9:00am room 1460 at Central office.

I am requesting accommodations of a soft padded chair with arms and a cot with pillows to allow an adult 5'3"to lay on, I am currently being medically treated for a severe back injury. SEE ATTACHED Doctor's comments.

Thank you for your consideration in regards to this request.


Respectfully,

*Jerlene Harris*

Jerlene Harris


CC: Earl Silbar, Chief Steward Local 3506

# RX Pain Management Group, P.C

*229 W. 25th Place, Chicago, IL  60616*
Tel:312) 808-9836 * Fax:312) 808-0837 * Pager:312) 740-8888

**DATE** _3/28/03_

**This certifies that** _Harris Jerlene_ **is under my care**
(Patient Name)
**and should release from work/school from** _3/31/03_ **to** _6/30/03_

**and will be able to return to work/school as of** _guarded_

**COMMENTS**

_Dr. Loo  722.1_

_Renderloputz  724.4_

_Neck & Back pain 723.1, 724.2_

_pl. patient is totally_

_incapacitated from any_

_duty_

**SIGNED** _Robin Xie MD_

**City Colleges of Chicago**

## Office of the General Counsel

June 6, 2003

Earl Silbar
Chief Steward
AFSCME, Council 31, Local 3506
1244 W. Barry, 1st Floor
Chicago, Illinois 60657-4210

Re:     *AFSCME Local 3506 ("Union")*
        *Grievant: Jerlene Harris*
        *Grievance #: 3506-OH-03032  (Union #163 and 382)*

Dear Mr. Silbar:

A Step II grievance meeting was scheduled on these matters on April 22, 2003 at the District Office. However, the grievances (which are identical but bear two different Union grievance numbers) were not discussed because the meeting was devoted to two other grievances filed by grievant. As I am leaving my position with City Colleges effective June 6, 2003, I am disposing of the grievances based upon the paper record before me.

The grievance concerns an alleged failure on the part of Olive-Harvey College to properly process Grievant's application for a State University Retirement System ("SURS") disability pension or for workers compensation benefits. Grievant sent a letter to the College's Personnel Assistant, Lenn Arnold, on March 6, 2003, detailing what she believed were incomplete and inaccurate responses to the questions on the Employer's section of the disability application. Ms. Arnold completed the incomplete parts of the application on March 21, 2003 and returned them to Grievant. It is unclear whether there are outstanding issues with respect to the SURS disability application. The District has no application for worker's compensation benefits, though incident reports and notices are required to be made to enable the College representatives and the District's Third Party administrator to process and investigate alleged employment-related injuries. It is unclear from the record before me precisely what Grievant claims the District failed to do with respect to processing a workers compensation claim.

Grievant claims a violation of Articles III and XIV.7. Article III.3 prohibits violation of employee's constitutional or statutory rights. Article XIV.7 requires the Board to "endeavor to provide a safe work environment." The record before me reveals no violation of these provisions

and I doubt that the latter contract section is applicable to the factual scenario set forth in the grievances. The grievances are denied.

With respect to the SURS application, if there is any remaining dispute, it appears only that they pertain to disputes between Grievant and the College about the physical demands of the position of Adult Educator. Grievant believes that the job is more physically demanding with respect to bending, stooping and seeing than the College does. Grievant also believes that she is subject to temperature and humidity extremes in the work place because she travels between buildings. The College does not believe that that is quite what SURS was getting at when it asks if an employee works in extreme temperatures or in extreme humidity. The same dispute arises with respect to Grievant's disagreement about her exposure to dust and other particles. The College does not believe that having to walk by bird droppings or inhabiting a classroom or office space that has not been dusted to Grievant's satisfaction means that the "job requires exposure to dust, fumes, gases, chemicals."

These disagreements about the College's responses to the SURS questionnaire are not grievable. The College is required to respond to the questions to the best of its knowledge and belief. If Grievant disagrees with the Employer's response, her remedy is to express that to SURS and follow the SURS procedures for adjudicating disputes about her disability. The collective bargaining agreement cannot and does not dictate to the College that it must answer questions on a disability application in a manner that the College deems inaccurate.

For all of the foregoing reasons, the grievances are denied.

Sincerely,

*Virginia Reyes*

Virginia Reyes

VR

cc:    Wayne Watson, Chancellor
       Maritza Marrero, V.C. Human Resources
       Joseph T. Moriarty, Associate General Counsel
       Valerie Roberson, Associate VC for Academic Affairs, Adult Education
       College Presidents
       College Vice Presidents
       Adult Education Deans

 

# REGIONAL MRI OF SOUTH HOLLAND

**NAME:**   HARRIS, Jerlene

**PATIENT NUMBER:** 6972

**REF. PHYSICIAN:** Paul B. Levy, D.C.

**DATE:**     2-17-01

**EXAM:**   MRI of the Lumbar Spine

16236 Prince Drive
th Holland, IL 60473
(708) 333-1400
fax - (708) 333-0110

*ames V. Zelch, M.D.*
Medical Director

*nathan B. Westrich*
Director

*inginia C. Poirier, M.D.*
Neuroradiology

*Michael J. Paley, M.D.*
Nuclear Medicine

*Douglas S. Arnson, M.D.*
Musculoskeletal MR

*Alison P. Pryce, M.D.*
*Mark Breji, M.D.*
Diagnostic Radiology

*url W. Tessman, D.P.M.*
Foot & Ankle

**INDICATIONS:**   54 year old with low back pain.

**PROCEDURE:**   Images were obtained in the sagittal and axial planes using T1 and T2 weighted Spin echo pulse sequences.

**FINDINGS:**   All lumbar discs show a variable degree of narrowing and dehydration. Multi-level endplate spurring is present.

At L1-2, there is no herniation, foraminal or canal impingement.

At L2-3, there is a central disc herniation of 3-4 mm, with mild ventral impingement of the dural sac. The foramina are patent.

At L3-4, there is a 2-3 mm bulge with minimal impression on the dural sac. The foramina are patent.

At L4-5, there is a central disc herniation in the range of 5 mm, compressing the ventral margin of the dural sac. There is mild facet and ligamentum flavum hypertrophy as well, and these changes cause AP narrowing of the dural sac to approximately 7 mm.   The foramina appear patent.

At L5-S1, there is no herniation, foraminal or canal impingement.

The conus appears normal. There is no pathologic marrow signal or vertebral body compression.

**CONCLUSION:**
1.   Multi-level lumbar disc disease.
2.   L2-3 central herniation, with mild ventral impingement of dural sac.
3.   L3-4 mild bulge.
4.   L4-5 prominent central herniation, compressing the sac. Facet and ligamentum flavum hypertrophy further compromise the AP diameter.

Douglas S. Arnson, M.D.
DSA:blf, 2/19/01

FROM : FUJI, Inc.                    FAX NO. : 8476743381                    Oct. 07 2003 06:54PM  P2

# S U R S

## State Universities Retirement System of Illinois

Serving Illinois Community Colleges and Universities

1901 Fox Drive • Champaign  IL  61820
1-800-ASK SURS
(217) 378-9800 (FAX)
(217) 378-8800 (C-U)

August 8, 2003

Dr Renlin Xia
730 West 35th Street
Chicago, Illinois 60616

RE: Jerlene Harris
S.S. # 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

Dear Dr. Xia:

This letter will serve as confirmation of your telephone conversation with Dr. David Weiss on 8/7/03, in which you indicated that there was no ~~medical~~ contraindication to Ms. Harris *(handwritten: and the)* returning to work. Please sign and date below to confirm. You may fax your response to our office at (217) 378-9800. *(handwritten: and I recommend that she ... the med)*

*(handwritten: and I recommend that she may be on light duty basis until)*

Physician's Signature _____ Date 10/15/03

If you have any questions, please feel free to contact our office at 1-800-275-7877, and ask to speak with me.

Sincerely yours,

*Tamara E. Wells*

Tamara E. Wells
Medical Claims Processor

cc:     Ms. Jerlene Harris
        15313 Ashland Avenue
        Harvey, Illinois  60426-3012

NAME: Jerlene Harris          SSN: 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

To determine your patient's ability to do *work-related activities* on a *day-to-day basis in a regular work setting*, please give us your opinion -- **based on your examination** -- of how your patient's physical capabilities are affected *by the impairment(s)*. Do not consider your patient's age, sex or work experience. Consider the medical history, the chronicity of findings (or lack thereof), symptoms *(including differing individual tolerances for pain, etc.)*, and the expected duration of any work-related limitations.

For each activity shown below:

> (1) Indicate your patient's ability to perform the activity; and

> (2) Identify the particular medical findings (e.g., physical examination findings, x-ray findings, laboratory test results, history, symptoms (including pain), etc.) which support your opinion regarding any limitations.

**IT IS IMPORTANT THAT YOU RELATE PARTICULAR MEDICAL FINDINGS TO ANY REDUCTION IN CAPACITY; THE USEFULNESS OF YOUR OPINION DEPENDS ON THE EXTENT TO WHICH YOU DO THIS.**

1. Maximum ability to lift and carry on an *occasional* basis (no more than 1/3 of an 8-hour day).

   No limitation   100#   50#   20#   10#   less than 10#

2. Maximum ability to lift and carry on a *frequent* basis (1/3 to 2/3 of an 8-hour day).

   No limitation   50#   25#   10#   less than 10#

3. Maximum ability to stand and walk (with normal breaks) during an 8-hour day.
   No limit   about 6 hrs.   about 4 hrs.   about 3 hrs.   about 2 hrs.   less than 2 hrs.

4. Maximum ability to sit (with normal breaks) during an 8-hour day.
   No limit   about 6 hrs.   about 4 hrs.   about 3 hrs   about 2 hrs.   less than 2 hrs.

5. If your patient must periodically alternate sitting, standing or walking to relieve discomfort:

   How long can your patient **sit** before changing position 1-2/wz.

How long can your patient **stand** before changing position?

0   5   10   15   20   30   45   60   90
              Minutes

How **often** must your patient **walk around**?   Frequency

0   5   10   15   20   30   45   60   90
              Minutes

How **long** must your patient **walk each time**?   Duration:

0   5   10   15   20   30   45   60   90
              Minutes

Does your patient need the opportunity to shift **at will** from sitting or standing/walking?                    Yes        No

6.  Will your patient sometimes need to lie down at unpredictable intervals during a work shift?            Yes        No

    If yes, how often do you think this will happen?  _3-4X/day_

7.  What medical findings support the limitations described above?

    - Multiple Herniated Disc
    - Back Spasms w/ Radiculopathy
      Cervical Radiculopathy
    - Compress Thumb

8.  How often can your patient perform the following *postural activities*?

|              | *Frequently | **Occasionally | Never |
|--------------|-------------|----------------|-------|
| Twist        |             | /              |       |
| Stoop (bend) |             | /              |       |
| Crouch       |             |                | /     |
| Climb stairs |             | /              |       |

Climb ladders

*Frequently:     from one-third to two-thirds of an eight hour
                 day
**Occasionally:  from very little up to one-third of an eight hour
                 day

9. Are the following PHYSICAL FUNCTIONS affected by the impairment?

Reaching (including overhead)     (Yes)   No
Handling (gross manipulation)     (Yes)   No
Fingering (fine manipulation)     (Yes)   No
Feeling     (Yes)   No
Pushing/Pulling     (Yes)   No

A. How are these physical functions affected? _____
*(1) Carpal Tunnel Syndrome,*
*Cervical Radiculopathy.*

B. What medical findings support this?
*MRI, EMG/NCS, X-ray / P.E.*

| 10. ENVIRONMENTAL RESTRICTIONS: | NO RESTRICTION | AVOID CONCENTRATED EXPOSURE | AVOID EVEN MODERATE EXPOSURE | AVOID ALL EXPOSURE |
|---|---|---|---|---|
| Extreme cold | | | | ✓ |
| Extreme heat | | | | ✓ |
| Wetness | | | ✓ | |
| Humidity | | | ✓ | |
| Noise | | | ✓ | |
| Fumes, odors, dusts, gases, poor ventilation, etc. | | | | ✓ |
| Hazards (machinery, heights, etc.) | | | | ✓ |

Describe how these environmental factors impair activities and identify hazards to be avoided. Also explain what medical findings support these limitations. *Extreme Heat/Cold will kill you*

11. State any other work-related activities which are affected by the impairment such as need for assistive device for ambulation, need to elevate leg, limits on kneeling, crawling, balancing, seeing, hearing or speaking, or limitations related to a mental impairment. What medical findings support this? *uses a cane*

12. On the average, how often do you anticipate that your patient's impairments or treatment would cause your patient to be absent from work?

Never     About once a month     (> About three times a month)

Less than     About twice a month     Mc . than three
once a month                                    times a month

_____ *1/2/04* _____                   *[Physician's signature]*
Date                                        Physician's signature

*Family Medicine/pain*
*736 W. 35th St.*
*Chicago, Il 60616*

## MUSCULOSKELETAL DEFECTS OR FRACTURES

PATIENT NAME: _Jerlene Harris_

SOCIAL SECURITY #: _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_

TO THE DOCTOR: Please complete the following report, attaching copies of lab results for each condition. Please use the back of the form if additional space is needed.

1. Does this patient suffer from any impairment or disease of the musculoskeletal system?
   _✓_ yes _____ no. If yes,

   A. What is the current diagnosis? _Herniated Disc_
   _Multilumbar Disc Disease, Nerve Impingement_
   _(L) Carpal Tunnel, Cervical Radiculopathy_

   B. On what date was the diagnoses first made? _2/17/01_

   C. What is the date of onset, if different? _1/01_

   D. For how long have you been treating the condition? _Since 7/8/02_

   E. What is the most recent date of examination? _1/2/04_

   F. What was the patient's height _____ weight _____ at that time?

2. Location of fracture(s): _Herniated Disc L2 to L5_
   _(L) Wrist Carpal Tunnel_

3. Have any of the following diagnostic techniques been performed?

   | | yes | no |
   |---|---|---|
   | Xray | ✓ | |
   | CT Scan | ✓ | no tos |
   | EMG Studies | ✓ | |
   | MRI | yes ✓ | |

4. Functional loss - describe the following:

   A. Limitation of motion in involved areas: _Low Back_
   _(L) Hip, Lower Ext, (L) wrist_

B. Is there any atrophy?  Yes ___  No ___

*Mild L hypothenar / Thenar*
*Lumbo Sacral / L thigh*

C. Is there any weakness of swelling?  Yes ✓ No___

D. Is there any deformity(s)?  Yes ___  No ___✓

5. Is there any pain in any of the involved areas?
    Yes ✓  No ___

6. Ambulation:  normal _____  bedfast _____  cane ___✓
   crutches _____  wheelchair _____  walker _____

7. Is the degree of pain described by patient reasonably
   related to the fracture or related underlying
impairments?  Yes ✓ No ___

8. Since date of onset, has the patient had full recovery?
    Yes ___  No ✓

9. If not, is the condition improving ___ stable ___✓
deteriorating ___

10. Has surgery been performed?    Yes ___  No ✓
    If yes, what procedures?_____
    on what date? _____ at what hospital _____

11. Does the patient suffer from acute pain?  If so, after
    what activity?  ____ *yes* _____

12. Does the patient suffer from chronic pain?  Yes ✓ No___
    If so, please describe.
    Please complete the Physical Capacities form.

Date: __1/2/04__        _____(Physician's Signature)_____

                        Physician's Signature,

PLEASE PRINT  Name: F-SALICENG M.D. / RENLIN XIA M.
        Specialty: Occup hand / Family Medicine / Pa
        Address: 736 W. 35th St.
                  Chicago IL, 60616

## PAIN REPORT

Patient Name: JERLENE HARRIS
Social Security #: 336 - 38 - 5380
Date of Birth: 10-15-46

1.  Does this patient experience or complain of pain in part of his/her body? ✓ YES __ NO

    If yes, where does s/he experience this pain? _Neck_

    _Shoulder, Lower Back, Buttock/th_

2.  Are the complaints of pain within the range that is reasonably related to a physical illness that has been diagnosed? ✓ YES __ NO

    If yes, what is the physical basis for the pain and the date(s) of onset?_____

    _MRI, EMG, X-ray, CT S_

3.  On the basis of clinical observations and diagnostic impressions, does this patient experience:

    A.  Chronic Pain? ✓ YES __ NO If so, where?_____

    B.  Acute Pain? ✓ YES __ NO If so, where and upon what activity? _____

4.  Is the pain: Relieved by medication? ✓ YES __ NO

    Where?_ Back/Ne_

    Relieved by heat? ✓ YES __ NO _Some_

    Where?_____

    Other, please explain_____

    Relieved by none of the above _mild relief_

5. If the pain is relieved by one or the above, does that therapy or medication alleviate the pain completely?

_____ YES _✓_ NO

6. List the dosage, frequency, and name of the medications prescribed for this patient for pain: _Tramadol 50 mg Q(10) (90 a day)_ _methocarbamol (O)(1)_ _Doxepin 1 h.s._

Do any of the medications listed above cause the patient any side effects? _✓_ Yes ___ NO

If yes, please describe: _Nausea, Vomiting_ _Dizzy Spells._

7. Do you believe this patient experiences so much pain that s/he is unable to work on a sustained basis?
_✓_ YES ___ NO

8. Is the level of pain suffered by the patient likely to increase if the patient returns to work?
_✓_ YES ___ NO

DATE _1/4/04_  Physician's Signature & Title _Filemon Elibengud._

PLEASE PRINT: Physician's Name _FILEMON ELIBENG M.D_

Specialty _Occupational Med/Forensic & Practice_

Address _736 W 35th St_

Telephone _Chicago IL 60616_
_773 - 247 - 2131_

FORM - D5M

Equal Employment Opportunity Commission

# DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Jerlene Harris<br>15313 Ashland<br>Harvey, Illinois  60426 | From:  Equal Employment Opportunity Commission<br>Chicago District Office<br>500 West Madison Street<br>Suite 2800<br>Chicago, Illinois  60661 |

Certified Mail No.:  7001 1940 0003 8831 4168

[    ] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2003-34923 | Dorothea Hines, Investigator | (312) 886-9123 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[    ]   The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[    ]   Respondent employs less than the required number of employees.

[    ]   Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[    ]   You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[    ]   The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[    ]   The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ X ]   The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[    ]   Other (*briefly state*) _____

### - NOTICE OF SUIT RIGHTS -

[ X ]   **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[    ]   **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[    ]   **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

11-10-03

On behalf of the Commission

John P. Rowe, District Director

Enclosures

    Information Sheet
    Copy of Charge

cc:  Respondent(s)        City Colleges of Chicago, Olive Harvey College

*Received from: Jeulene Harris 8/29/2003 4:5?*

## RX Pain Management Group, P.C

229 W. 25th Place, Chicago, IL 60616
Tel:312) 808-9836 * Fax:312) 808-0837 * Pager:312) 740-8888

DATE _____8/29/03_____

*Barnes advised Harris to see Lenn Arnold Personnel 1st before returning to work.*

This certifies that ___Jeulene Harris___ is under my care
(Patient Name)

and should release from work/school from _____ to _____

and will be able to return to work/school as of ___As 9/1/03___*

*only on light duty Base Sep 1st*

COMMENTS

No bend, No Climb

No lift/raising > 10 lb

No stand/walk > 10 min

orthopedic Chair

Continue current therapy & medication

Re-Eval on 10/1/03

*8/29/03 15?*

SIGNED ___Rui Xia, MD___

**OLIVE-HARVEY COLLEGE**
10001 South Woodlawn Avenue, Chicago, IL 60628

Telephone 773.291.6100
Facsimile 773.291.6304

January 12, 2004

Ms. Jerlene Harris
15313 S. Ashland Avenue
Harvey, IL  60426

Dear Ms. Harris:

Your assignment for the Spring 2004 Semester was based upon Olive-Harvey College being able to meet the accommodations recommended by your physician in August 2003 (providing you with an orthopedic chair).  At your request, we have also made available a podium.  Based upon the document (a physician's statement) that you presented to us today, your needs have changed; your limitations have increased, and you stated that your condition has gotten worse.

Therefore, your assignment is on hold until we have had the opportunity to consult with our legal counsel regarding these new requirements and conditions.  Until this is cleared up, do not report to work.

Sincerely,

Martha J. Barnes
Dean of Adult Education

cc:     Yolande Bourgeois, General Counsel
        Craig S. Washington, President

*One of the City Colleges of Chicago*

# CITY COLLEGES OF CHICAGO
## LEAVE EXTENSION REQUEST FORM

**OFFICE OF PERSONNEL**

Name __Jerlene Harris__

JUN 27 2003

*Shirley Clopp*

OLIVE·HARVEY COLLEGE

Employee ID Number __0003149__

Soc. Sec. No __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__

College/District Office __Olive-Harvey__

Job Family __371__

Department ___Adult Education Program___

Position Title __Adult Educator__

Home Tel No __708-333-2130__

Full-Time _____    Part-Time __X__    Union __X__    Work Tel No __773-291-6700__

Type of Leave Requested: Illness _____ Personal _____ FMLA _____ Professional _____ Special _____ Parental _____

Part-Time [Tenured Faculty Only] _____ Military _____ Peace Corps _____ Medical __X__

Other Military Leave _____ Jury Duty or Court Attendance _____ Summer _____ Other _____

This Leave will be: Paid _____ Unpaid __X__ Partially Paid/ Partially Unpaid _____ Pay Percentage while on leave % _____

Leave Dates: From __06__ / __30__ / __2003__ to __07__ / __31__ / __2003__
          (Month)   (Day)   (Year)      (Month) (Day)   (Year)

This leave extension is being requested for the following reason(s): On February 3, 2003 in building six women restroom my foot slipped in something on thefloor when I was turning to get the tissue paper. My ba k hitthe toilet several times. This fall has aggravated my existing medical conditions: lumbar disa disorders, carpal tunnel Lhand, neck and back injuries. Iam in constant pain.

Appropriate documentation supporting this extension request must be submitted with this form. (Ex: A medical statement from a health care provider indicating the need for a requested illness, FMLA, or parental leave, a statement of planned activities for a professional leave, or a statement indicating the reason for a personal, special, or summer leave, etc.) This extension covers only the definite period stated. This leave may be terminated prior to the date specified above, upon approval of College President/Department Head. A medical release to return to full duty status must be submitted prior to a return from an illness, FMLA, or parental leave. The City Colleges of Chicago reserves the right to require submission to a medical evaluation if deemed necessary. An employee will be considered to have abandoned their position and may be subject to disciplinary action if they do not return to work or submit another Leave Extension Request form on or before the end date of this requested leave.

*Jerlene Harris*

Signature of Employee

*June 27, 2003*

Date

Signature of Immediate Supervisor

Date

Signature of College President or Vice Chancellor

Date

FOR DISTRICT OFFICE HUMAN RESOURCES DEPARTMENT USE ONLY

Approved by Human Resources Department    Yes _____ No _____

Signature of Human Resources Representative

Date

Revised: 12/99

# RX Pain Management Group, P.C

*229 W. 25th Place, Chicago, IL 60616*
Tel:312) 808-9836 * Fax:312) 808-0837 * Pager:312) 740-8888

OFFICE OF PERSONNEL

JUN 2 7 2003

OLIVE-HARVEY COLLEGE

**DATE** _6/27/03_

This certifies that _Jerlene Harris_ is under my care
(Patient Name )
and should release from work/school from _7/1/03_ to _7/31/03_

and will be able to return to work/school as of _guarding_.

**COMMENTS**

Dx. low Back pain
Lumbar radiculopathy
Lumbar disc disorder
Carpal Tunnel Syndrom
Fibromylagses
M.D Patient is totally incapacitated
② continue Physical Therapy
③ Home Rest
**SIGNED** ④ continue current Medication

Rubi Xia MD


City Colleges of Chicago

**OFFICE OF PERSONNEL**

JUN 2 7 2003

O' VE • HARVEY COLLEGE

Payroll Status Form

To be completed and submitted with Leave Request Form and Leave Extension Request Form

I have requested a Leave of Absence from ___06/30/2003___ to ___07-31___ /2003

My requested payroll status during this leave is:

☒ the entire leave will be unpaid;
☐ the entire leave will be paid; or
☐ the leave will be partially paid and partially unpaid.

For the paid portion of the leave, the paid benefit time that will be used is:

☐ sick:     from _____ to _____;
Total number of sick days used _____.

☐ vacation:   from _____ to _____;
Total number of vacation days used _____.

☐ personal:   from _____ to _____.
Total number of personal days used _____.

*Jerlene Harris*      *June, 27 2003*
Signature of Employee      Date

_____  Date
Signature of Immediate Supervisor

_____  Date
Signature of College President or Vice Chancellor

_____  _____

FOR HUMAN RESOURCES DEPARTMENT USE ONLY

Employee has and is approved to use the accrued benefit time requested:

Sick     _____ Yes _____ No

Vacation  _____ Yes _____ No

Personal  _____ Yes _____ No

_____  _____
Signature of Human Resources Representative  Date

C:\My Files\FMLA\PAYROLL STATUS FORM

# CITY COLLEGES OF CHICAGO
## LEAVE EXTENSION REQUEST FORM

OFFICE OF PERSONNEL

JUN 27 2003

OLIVE•HARVEY COLLEGE

Name **Jerlene Harris**

College/District Office **Olive-Harvey**

Job Family **371**

Position Title **Adult Educator**

Full-Time _____     Part-Time **X**     Union **X**

Employee ID Number **0003149**

Soc. Sec. No **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**

Department **Adult Education Program**

Home Tel No **708-333-2130**

Work Tel No **773-291-6700**

Type of Leave Requested: Illness _____ Personal _____ FMLA _____ Professional _____ Special _____ Parental _____

Part-Time [Tenured Faculty Only] _____ Military _____ Peace Corps _____ Medical **X**

Other Military Leave _____ Jury Duty or Court Attendance _____ Summer _____ Other _____

This Leave will be: Paid _____ Unpaid **X** Partially Paid/ Partially Unpaid _____ Pay Percentage while on leave % _____

Leave Dates: From **06** / **30** / **2003** to **07** / **31** / **2003**
(Month) (Day) (Year)     (Month) (Day) (Year)

This leave extension is being requested for the following reason(s): On February 3, 2003 in building six women restroom my foot slipped in something on the floor when I was turning to get the tissue paper. M— ba k hit the toilet several times. This fall has aggravated my existing medical conditions: lumbar disc disorders, carpal tunnel Lhand, neck and back injuries. I am in constant pain.

Appropriate documentation supporting this extension request must be submitted with this form. (Ex: A medical statement from a health care provider indicating the need for a requested illness, FMLA, or parental leave, a statement of planned activities for a professional leave, or a statement indicating the reason for a personal, special, or summer leave, etc.) This extension covers only the definite period stated. This leave may be terminated prior to the date specified above, upon approval of College President/Department Head. A medical release to return to full duty status must be submitted prior to a return from an illness, FMLA, or parental leave. The City Colleges of Chicago reserves the right to require submission to a medical evaluation if deemed necessary. An employee will be considered to have abandoned their position and may be subject to disciplinary action if they do not return to work or submit another Leave Extension Request form on or before the end date of this requested leave.

Signature of Employee     Date June 27, 2003

Signature of Immediate Supervisor     Date 7/1/03

Signature of College President or Vice Chancellor     Date 7/1/03

---

FOR DISTRICT OFFICE HUMAN RESOURCES DEPARTMENT USE ONLY

Approved by Human Resources Department     Yes _____ No _____

Signature of Human Resources Representative     Date

Revised: 12/99

**City Colleges of Chicago**

Payroll Status Form

OFFICE OF PERSONNEL

JUN ? 7 2003

OLIVE - HARVEY COLLEGE

To be completed and submitted with Leave Request Form and Leave Extension Request Form

I have requested a Leave of Absence from ___06/30/2003___ to ___07-31___ /2003

My requested payroll status during this leave is:

☒ the entire leave will be unpaid;
☐ the entire leave will be paid; or
☐ the leave will be partially paid and partially unpaid.

For the paid portion of the leave, the paid benefit time that will be used is:

☐ sick:        from _____ to _____;
Total number of sick days used _____.

☐ vacation:    from _____ to _____;
Total number of vacation days used _____.

☐ personal:    from _____ to _____.
Total number of personal days used _____.

_Jerlene Harris_                                    _June 27, 2003_
Signature of Employee                               Date

_Martha J Bauner_   *                               _7/15/03_
Signature of Immediate Supervisor                   Date

_Charles A. Green, Jr._                             _7/1/03_
Signature of College President or Vice Chancellor   Date

_____                            _____


FOR HUMAN RESOURCES DEPARTMENT USE ONLY

Employee has and is approved to use the accrued benefit time requested:

Sick        _____ Yes _____ No

Vacation    _____ Yes _____ No

Personal    _____ Yes _____ No

* per the request
of Jerlene Harris
via voice mail
to Lenn Arnald,
Personnel assistant

_____                _____
Signature of Human Resources Representative     Date

C:\My Files\FMLA\PAYROLL STATUS FORM

# RX Pain Management Group, P.C

*229 W. 25th Place, Chicago, IL 60616*
Tel:312) 808-9836 * Fax:312) 808-0837 * Pager:312) 740-8888

> OFFICE OF PERSONNEL
>
> JUN 2 7 2003
>
> OLIVE•HARVEY COLLEGE

**DATE** _____6/27/03_____

**This certifies that** ___Jerlene Harris___ **is under my care**
___(Patient Name)___
**and should release from work/school from** __7/1/03__ **to** __7/31/03__

**and will be able to return to work/school as of** ___guarding___.

## COMMENTS

Dx. low Back pain

Lumbar radiculopathy

Lumbar disc disorder

Carpal Tunnel Syndrom

Fibromylagia

M.① Patient is totally incapacitated
② Continue Physical Therapy
③ Home Rest
**SIGNED** ④ continue current medication

Ruhi Xia MD